```
                    IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF CALIFORNIA




UNITED STATES OF AMERICA,        )     15-CR-0530-JLS
          PLAINTIFF,             )
                                 )
VS.                              )     SAN DIEGO, CA
                                 )     DECEMBER 2, 2016
PAUL SIMPKINS,                   )     9:00 A.M.
          DEFENDANT.             )




                    TRANSCRIPT OF SENTENCING PROCEEDINGS

                BEFORE THE HONORABLE JANIS L. SAMMARTINO

                    UNITED STATES DISTRICT JUDGE




APPEARANCES:

FOR THE GOVERNMENT:  OFFICE OF THE U. S. ATTORNEY
                     BY:  BRIAN R. YOUNG, ESQ.
                          MARK W. PLETCHER, ESQ.
                          PATRICK HOVAKIMIAN, ESQ.
                     880 FRONT STREET, RM. 6293
                     SAN DIEGO, CA  92101


FOR THE DEFENDANT:   LAW OFFICES OF JOHN C. LEMON
                     BY:  JOHN C. LEMON, ESQ.
                     1350 COLUMBIA STREET, SUITE 600
                     SAN DIEGO, CA  92101


COURT REPORTER:      FRANK J. RANGUS, OCR
                     U. S. COURTHOUSE
                     333 W. BROADWAY, SUITE 420
                     SAN DIEGO, CA  92101
                     (619) 318-8590


PROCEEDINGS RECORDED BY ELECTRONIC STENOGRAPHY; TRANSCRIPT
PRODUCED BY COMPUTER.
```

I N D E X

PROCEEDINGS:                    PAGE

SENTENCE                         27

1           THE DEPUTY CLERK:  NUMBER SEVEN ON CALENDAR,

2    15-CR-0530, UNITED STATES OF AMERICA VS. PAUL SIMPKINS, FOR A

3    SENTENCE WITH A PRESENTENCE REPORT.

4           MR. LEMON:  GOOD MORNING, YOUR HONOR.  JOHN LEMON FOR

5    MR. SIMPKINS.  HE'S IN CUSTODY AND HE'LL BE OUT MOMENTARILY.

6           THE COURT:  THANK YOU.

7           MR. YOUNG:  GOOD MORNING, YOUR HONOR.  BRIAN YOUNG

8    WITH MARK PLETCHER AND PATRICK HOVAKIMIAN ON BEHALF OF THE

9    UNITED STATES.

10          THE COURT:  THANK YOU.  GOOD MORNING TO ALL OF YOU.

11          MR. LEMON:  YOUR HONOR, MR. SIMPKINS IS PRESENT.

12          COULD I HAVE JUST A MOMENT TO SPEAK WITH HIM?

13          THE COURT:  OF COURSE.

14          (OFF-THE-RECORD DISCUSSION)

15          MR. LEMON:  THANK YOU, YOUR HONOR.

16          THE COURT:  THE COURT HAS READ AND CONSIDERED THE

17   FOLLOWING DOCUMENTS FOR SENTENCING THIS MORNING:  THE

18   PRESENTENCE REPORT; DEFENDANT'S SENTENCING SUMMARY CHART;

19   DEFENDANT'S SENTENCING MEMORANDUM, WHICH HAS THE DEFENDANT'S

20   LETTER ATTACHED, HIS WIFE'S LETTER, NUMEROUS CERTIFICATES AND

21   PHOTOGRAPHS ATTACHED.  I HAVE THE GOVERNMENT'S SENTENCING

22   SUMMARY CHART.  I HAVE THE GOVERNMENT'S SENTENCING MEMORANDUM,

23   WHICH, LIKEWISE, HAS ATTACHMENTS THAT THE COURT HAS GONE

24   THROUGH, AND I HAVE THE UNDERLYING PLEA AGREEMENT.

25          IS THAT EVERYTHING?

1          MR. LEMON: YES, YOUR HONOR. THERE'S ONE, I THINK,

2     FACTUAL CLARIFICATION TO START WITH, THOUGH, WHICH IS THAT,

3     SINCE THE PARTIES FILED THEIR SENTENCING MEMORANDUM, MR.

4     SIMPKINS MADE ANOTHER ALMOST $50,000 IN RESTITUTION AND IS IN

5     COMPLETE COMPLIANCE WITH THE PLEA AGREEMENT, THE REQUIREMENTS

6     OF THE PLEA AGREEMENT AT THIS POINT.  SO I JUST WANTED TO

7     CLEAR THAT UP.

8          THE COURT: OKAY.  THANK YOU.  AND WHEN WE GET TO

9     THAT POINT ON THE RESTITUTION AND FORFEITURE, YOU CAN MAKE

10    SURE THAT I GET THOSE NUMBERS CORRECT.

11         MR. LEMON: OKAY.

12         THE COURT: OKAY.  THANK YOU.

13         YOU'VE HAD AN OPPORTUNITY TO GO THROUGH EVERYTHING

14    WITH YOUR CLIENT, MR. LEMON?

15         MR. LEMON: YES.

16         THE COURT: OKAY.  AS BOTH SIDES KNOW, I KNOW THIS

17    CASE PRETTY WELL, BUT EACH INDIVIDUAL WHO'S COME BEFORE THE

18    COURT IN THIS MATTER STANDS UNIQUELY SITUATED AND HAS A

19    DIFFERENT AND UNIQUE ROLE, AS DOES MR. SIMPKINS IN HIS

20    CONDUCT, AND THIS IS DIFFERENT THAN THAT OF THE OTHERS, BUT I

21    KNOW THE OVERALL SCHEME QUITE WELL AT THIS JUNCTURE.

22         PLEASE GO AHEAD, COUNSEL, AND TELL ME WHATEVER YOU

23    WOULD LIKE TO TELL ME.  I KNOW THAT THE SPREAD BETWEEN BOTH

24    SIDES IS NOT A HUGE ONE FOR THIS CASE PARTICULARLY, WHICH I

25    NOTED WITH INTEREST.  GO AHEAD, SIR, ANYTHING YOU WOULD LIKE

1    TO TELL ME.

2            MR. LEMON:  YOUR HONOR, THAT'S EXACTLY RIGHT, AND,

3    FRANKLY, IT'S NOT OFTEN THAT I GET TO STAND BEFORE THE COURT

4    AND SAY THAT THE PROBATION OFFICER GOT IT EXACTLY RIGHT, BUT

5    THAT'S MY POSITION TODAY.  I BELIEVE THAT PROBATION'S

6    RECOMMENDATION OF 60 MONTHS, THAT IS THE PARSIMONIOUS SENTENCE

7    THAT IS SUFFICIENT BUT NOT GREATER THAN NECESSARY UNDER

8    3553(A).  I ALSO AGREE THAT A FINE IN THIS CASE WOULD NOT BE

9    APPROPRIATE, FOR REASONS THAT I WILL ELABORATE ON IN A MOMENT.

10           BUT IN BRIEF, CONSISTENT WITH HIS PLEA AGREEMENT, MR.

11   SIMPKINS HAS MADE $300,000 IN RESTITUTION AT THIS POINT.  HE

12   IS A DECORATED VETERAN OF THE U. S. AIR FORCE.  HE HAS NO

13   PRIOR RECORD WHATSOEVER.  HE IS SINCERELY REMORSEFUL, AND WE

14   ARE REQUESTING A 60-MONTH SENTENCE.  SO I'M NOT PROHIBITED, OR

15   I'M NOT PERMITTED UNDER THE PLEA AGREEMENT TO REQUEST

16   DEPARTURES.  I DID NOT DO THAT.  SO I'M GOING TO GO STRAIGHT

17   INTO 3553(A).

18           THE COURT:  OKAY.  FAIR ENOUGH.

19           MR. LEMON:  FIRST, WITH RESPECT TO THE NATURE AND

20   CIRCUMSTANCES OF THE OFFENSE, AS FAR AS MR. SIMPKINS' ROLE IN

21   THIS IS CONCERNED, IT IS MITIGATED BY BOTH HIS SINCERE REMORSE

22   AND HIS EFFORTS TO MAKE RESTITUTION.  I THINK YOUR HONOR,

23   OBVIOUSLY, READ HIS LETTER, WHICH WAS VERY THOUGHTFUL, AND HE

24   IS VERY GENUINELY REMORSEFUL ABOUT HIS INVOLVEMENT, AND HAS

25   CLEARLY ACCEPTED RESPONSIBILITY FOR HIS PARTICIPATION HERE.

1    HE HAS PAID $300,000, WHICH IS CONSISTENT WITH THE PLEA

2    AGREEMENT, LEAVING A BALANCE OF 150,000, WHICH HE'S GOING TO

3    PAY OFF OVER TIME AFTER HE'S RELEASED FROM PRISON.  THE ACTUAL

4    BRIBES TOOK PLACE ROUGHLY TEN YEARS AGO, 2006 AND 2007.  SINCE

5    THEN, MR. SIMPKINS HAD ADDITIONAL CONTACTS WITH LEONARD

6    FRANCIS, BUT THERE WERE NO MORE BRIBES THAT ACTUALLY TOOK

7    PLACE.  SO IT'S BEEN TEN YEARS SINCE THE MOST SERIOUS OFFENSE

8    CONDUCT OCCURRED.

9            AND, OBVIOUSLY, YOUR HONOR KNOWS THAT MR. SIMPKINS IS

10   NOT UNIQUELY CULPABLE IN THIS CASE.  THIS WAS A SPRAWLING

11   CONSPIRACY.  THERE'S BEEN SEVERAL NAVY ADMIRALS AND OTHER

12   HIGH-RANKING NAVAL OFFICERS THAT HAVE BEEN IMPLICATED IN THIS

13   CASE, MANY OF WHOM WERE CENSURED AND STILL PERMITTED TO RETIRE

14   WITH FULL BENEFITS.  I'LL ADDRESS SOME OF THAT WHEN I GET TO

15   DISPARITY IN A MOMENT.  BUT IF WE WERE TO, I GUESS, GO BACK TO

16   THE OLD-SCHOOL SORT OF CONSPIRACY MODEL WITH THE HUB AND

17   SPOKES, I MEAN, THE HUB IS LEONARD FRANCIS.  THIS IS NOT

18   SOMETHING THAT MR. SIMPKINS DREAMED UP, OR THAT CAME OUT OF

19   THE BLUE, OR THAT WAS INITIATED BY PAUL SIMPKINS.

20           AND WITH RESPECT TO HIS HISTORY AND CHARACTERISTICS,

21   MR. SIMPKINS HAS A VERY INTERESTING STORY, HAVING BEEN RAISED

22   IN THE OLD SOUTH DURING THE CIVIL RIGHTS MOVEMENT.  HE IS A

23   SELF-MADE MAN.  HE OVERCAME POVERTY AND SERIOUS RACIAL

24   DISCRIMINATION; ULTIMATELY GRADUATED FROM HIGH SCHOOL; JOINED

25   THE AIR FORCE; CONTINUED HIS EDUCATION; GOT A BACHELOR OF

1    SCIENCE FROM THE UNIVERSITY OF MARYLAND AND A MASTER'S DEGREE

2    FROM THE UNIVERSITY OF OKLAHOMA.

3            AND HE ALSO SERVED HIS COUNTRY HONORABLY FOR 21

4    YEARS, DURING WHICH TIME HE WAS AWARDED THE MERITORIOUS

5    SERVICE MEDAL; THE JOINT SERVICE COMMENDATION MEDAL; THE AIR

6    FORCE COMMENDATION MEDAL; THE AIR FORCE GOOD CONDUCT MEDAL

7    WITH FIVE OAK-LEAF CLUSTERS; THE NON-COMMISSIONED OFFICER

8    PROFESSIONAL MILITARY EDUCATION GRADUATE RIBBON WITH ONE

9    OAK-LEAF CLUSTER; THE AIR FORCE LONGEVITY SERVICE AWARD WITH

10   FOUR OAK-LEAF CLUSTERS; THE NATIONAL DEFENSE SERVICE MEDAL

11   WITH ONE OAK-LEAF CLUSTER; THE AIR FORCE OVERSEAS RIBBON LONG

12   WITH FOUR OAK-LEAF CLUSTERS; THE AIR FORCE TRAINING RIBBON;

13   AND THE AIR FORCE OUTSTANDING UNIT AWARD WITH TWO OAK-LEAF

14   CLUSTERS.  AND FOR FOUR YEARS, FROM AUGUST 2ND OF 1990 TO

15   MARCH 31ST OF 1994 -- MAYBE THAT'S THREE-AND-A-HALF YEARS.

16   BUT IN ANY EVENT, HE SERVED IN SUPPORT OF OPERATION DESERT

17   SHIELD AND DESERT STORM, AND AFTER THAT IS WHEN HE WENT TO

18   WORK AS A CIVILIAN SPECIALIST, AND THAT'S WHEN HE MADE A

19   TERRIBLE MISTAKE.

20           BUT, AGAIN, HE IS SINCERELY REMORSEFUL, AND HE'S

21   DETERMINED NOT TO LET THAT MISTAKE DEFINE THE REST OF HIS

22   LIFE.  AS HE EXPRESSED IN HIS LETTER TO YOUR HONOR, HE WANTS

23   TO START A NON-PROFIT ORGANIZATION WHEN HE GETS OUT OF PRISON.

24   HE ALSO WANTS TO VOLUNTEER TO SPEAK TO YOUTH AND YOUNG ADULTS

25   TO HELP THEM AVOID MAKING THE SAME MISTAKES THAT HE HAS MADE.

1          HE IS MARRIED TO A WOMAN NAMED YI HONG.  ALSO,

2    SOMETIMES IT SHOWS UP AS HONG YI.  BUT IN ANY EVENT, SHE IS A

3    SCIENTIST WHO IS CURRENTLY LIVING IN CHINA AND CARING FOR HER

4    MOTHER, WHO IS DYING OF CANCER.  HE HAS A TWO-YEAR-OLD SON,

5    PAUL, JR., WHO IS IN THAILAND WITH HIS CAREGIVER THERE.

6          MR. SIMPKINS HAS SIGNIFICANT MEDICAL ISSUES,

7    INCLUDING CHRONIC HEPATITIS, HIGH BLOOD PRESSURE, A HERNIATED

8    DISK, AND A CANCEROUS OR PRECANCEROUS SPOT ON HIS LIVER THAT

9    IS BEING MONITORED FOR POSSIBLE SURGERY.

10          HE'S ALSO BEEN A MODEL INMATE AT CCA.  HE'S BEEN

11    THERE COMING UP ON TWO YEARS.  AS YOUR HONOR SAW THE

12    CERTIFICATES THAT I FILED, HE COMPLETED SEVERAL PROGRAMS, AND

13    HE ACTUALLY -- I ACTUALLY -- I FORGOT TO TELL HIM THIS, BUT

14    THE LAST TIME I WENT TO SEE HIM AND CHECKED IN AT CCA, ONE OF

15    THE OFFICERS THERE ACTUALLY COMMENTED ON WHAT A MODEL INMATE

16    HE HAD BEEN, HOW HE'S CONGENIAL AND NICE TO EVERYBODY, AND

17    EVERYBODY LIKES HIM.  SO THAT JUST SHOWS, I THINK, THE WAY

18    HE'S EMBRACED THE SITUATION TO TRY TO BE THE BEST PERSON HE

19    CAN BE GOING FORWARD.  I THINK THAT SPEAKS TO THAT.

20          WITH RESPECT TO JUST PUNISHMENT, FIVE YEARS IS A LONG

21    TIME.  I MEAN, I UNDERSTAND THE GOVERNMENT IS ASKING FOR MORE,

22    BUT FIVE YEARS IS A LONG TIME, PARTICULARLY, AS I SAID IN MY

23    SENTENCING BRIEF, MR. SIMPKINS IS 61.  HE'S ACTUALLY 62 NOW.

24    FOR A 62-YEAR-OLD DECORATED VETERAN WITH ABSOLUTELY NO

25    PREVIOUS RECORD, 60 MONTHS IS MORE THAN ADEQUATE TO PROMOTE

1    RESPECT FOR THE LAW AND TO EFFECT A JUST PUNISHMENT.

2            AND THEN THAT BRINGS US TO SENTENCING DISPARITY,

3    WHICH, AGAIN, THE PEOPLE THAT ARE INVOLVED IN THIS CASE ARE

4    ALL OVER THE MAP, LITERALLY, AND IT'S VERY DIFFICULT TO

5    COMPARE APPLES AND ORANGES.  I UNDERSTAND THAT, BUT THE ONE

6    SENTENCE THAT'S CLOSE TO WHAT THE GOVERNMENT HAS RECOMMENDED

7    FOR MR. SIMPKINS, AND I'M NOT SURE IF I'M PRONOUNCING THIS

8    CORRECTLY, BUT IT WAS COMMANDER MISIEWICZ.

9            THE COURT:  I SENTENCED HIM TO 78 MONTHS.

10           MR. LEMON:  RIGHT.  AND THE THING ABOUT THAT, I

11   UNDERSTAND THAT THE GOVERNMENT'S POSITION IS MR. SIMPKINS TOOK

12   MORE MONEY THAN MR. MISIEWICZ TOOK, BUT HE WAS PASSING

13   CONFIDENTIAL INFORMATION TO MR. FRANCIS ABOUT THE UNITED

14   STATES' NUCLEAR ARSENAL.  I MEAN, I UNDERSTAND MONEY IS

15   IMPORTANT, BUT IT CERTAINLY CAN'T BE AS IMPORTANT AS NATIONAL

16   SECURITY, PARTICULARLY IN THE CONTEXT OF NUCLEAR WEAPONS.  SO

17   IN TERMS OF A BREACH OF THE PUBLIC'S TRUST, A BREACH OF A DUTY

18   TO THE UNITED STATES, AGAIN, I'M NOT HERE TO POINT THE FINGER

19   AT ANYBODY ELSE, BUT IN TERMS OF SENTENCING DISPARITY, I THINK

20   WHAT COMMANDER MISIEWICZ DID HAS TO BE MUCH MORE EGREGIOUS

21   THAN MR. SIMPKINS' BEHAVIOR, WHICH WAS BASICALLY ECONOMIC.

22           THE NEXT THING I WANTED TO ADDRESS IS THE

23   GOVERNMENT'S RECOMMENDATION FOR A $50,000 FINE, AND THIS IS,

24   I'M GOING TO PROFFER TO THE COURT, MY UNDERSTANDING OF MR.

25   SIMPKINS' FINANCES BASED ON MY CONVERSATIONS WITH HIM AND WITH

1    HIS WIFE.  OBVIOUSLY, WE AGREE WITH THE PROBATION OFFICER'S

2    RECOMMENDATION THAT NO FINE IS APPROPRIATE IN LIGHT OF THE

3    SIGNIFICANT RESTITUTION THAT MR. SIMPKINS STILL OWES.  WE

4    OBVIOUSLY AGREE WITH THAT.  AGAIN, IT WAS TEN YEARS AGO THAT

5    MR. SIMPKINS TOOK THE MONEY FROM MR. FRANCIS.  HE AND HIS WIFE

6    NOW ARE BASICALLY BROKE.  VIRGINIA, APPARENTLY, IS NOT A

7    COMMUNITY PROPERTY STATE.  THE COUPLE DON'T COMMINGLE THEIR

8    ASSETS IN THE FIRST PLACE, BUT TO HELP MR. SIMPKINS MAKE HIS

9    RESTITUTION PAYMENTS, MS. HONG HAS BASICALLY GONE THROUGH HER

10   SAVINGS.

11        SO AT THIS POINT MR. SIMPKINS HAS, ROUGHLY, $12,000

12   IN CHECKING, FIVE IN SAVINGS, AND A RETIREMENT, GOVERNMENT

13   RETIREMENT PLAN WITH 300,000 IN IT, BUT HE CAN'T WITHDRAW THAT

14   WITHOUT PENALTY UNTIL, I THINK, HE'S 65.  SO HE'S BASICALLY

15   WIPED OUT.  WHEN HE GETS OUT OF PRISON, HE'S GOING TO BE

16   MID-SIXTIES AND A CONVICTED FELON AND UNEMPLOYED, WHO OWES THE

17   GOVERNMENT $150,000 IN RESTITUTION.  IT'S GOING TO BE VERY

18   DIFFICULT FOR HIM TO -- IT'S GOING TO BE ONEROUS FOR HIM TO

19   TRY TO PAY BACK A $50,000 FINE ON TOP OF THE RESTITUTION

20   AMOUNT THAT WILL STILL BE OUTSTANDING.

21        WE ALSO KNOW FROM THE LITIGATION REGARDING THE BOND

22   THAT HE OWES MORE ON HIS HOUSE IN VIRGINIA THAN WHAT IT'S

23   WORTH.  HE BOUGHT IT AT THE PEAK OF THE MARKET, AND I THINK IT

24   APPRAISED AT $280,000, AND HE OWES 290,000 ON THE PROPERTY.

25   SO, WHEN HE GETS OUT OF PRISON, HIS PROSPECTS FOR FUTURE

1    EMPLOYMENT ARE GRIM.  IT IS UNLIKELY THAT HE IS GOING TO BE

2    ABLE TO MAKE A SIGNIFICANT AMOUNT OF MONEY IN THE FUTURE, AND

3    AFTER PAYING BACK THE 150,000 IN RESTITUTION THAT HE STILL

4    OWES, WHICH HE IS GOING TO PAY, HE WILL NOT HAVE A LOT LEFT TO

5    LIVE ON FOR THE REST OF HIS LIFE.  SO WE DO OPPOSE A FINE.

6         SO ULTIMATELY, YOUR HONOR, AGAIN, I THINK THAT THE

7    PROBATION OFFICER GOT IT EXACTLY RIGHT, THAT THE 60-MONTH

8    SENTENCE IS THE PARSIMONIOUS SENTENCE HERE.  WE WOULD

9    RESPECTFULLY ASK YOUR HONOR TO IMPOSE THAT SENTENCE, AS WELL

10   AS RECOMMEND THE RDAP PROGRAM FOR MR. SIMPKINS, WHO

11   ACKNOWLEDGED THAT HE HAS AN ALCOHOL PROBLEM.  WE'D REQUEST A

12   RECOMMENDATION FOR A MAXIMUM RRC PLACEMENT, GIVEN HIS AGE AND

13   HIS HEALTH, AND THEN, FINALLY, A RECOMMENDATION FOR A

14   DESIGNATION NEAR THE WESTERN DISTRICT OF VIRGINIA.

15        THE COURT:  OKAY.  NO, I WILL, OF COURSE, RECOMMEND

16   RDAP.  THE MAXIMUM RRC IS NOT AN ISSUE, AND THE WESTERN

17   DISTRICT OF VIRGINIA, THAT'S FINE.

18        THANK YOU, COUNSEL.

19        MR. LEMON:  THANK YOU.

20        OH, I'M SORRY.  YOUR HONOR, ONE OTHER THING.

21        THE COURT:  SURE.

22        MR. LEMON:  THE GOVERNMENT MENTIONED THAT MR.

23   SIMPKINS' WIFE IS A SCIENTIST AND THEREFORE SHOULD BE MAKING

24   SOME SIGNIFICANT INCOME.  FIRST OF ALL, I DON'T THINK THAT THE

25   TYPE OF SCIENTIST SHE IS, THAT SHE ACTUALLY MAKES THAT MUCH

1    MONEY.

2            THE COURT:  IS THAT IN AFFILIATION WITH A UNIVERSITY

3    HERE?

4            MR. LEMON:  WELL, SHE DID, APPARENTLY, BUT NOW SHE'S

5    WORKING FOR A PRIVATE CONTRACTOR IN CHINA.  SHE MAKES $60,000

6    A YEAR.

7            THE COURT:  OKAY.  THANK YOU, COUNSEL.

8            MR. SIMPKINS.  GOOD MORNING, SIR.

9            MR. SIMPKINS:  GOOD MORNING, MA'AM.

10           THE COURT:  IS THERE ANYTHING YOU WOULD LIKE TO SAY

11   THIS MORNING BEFORE SENTENCING?

12           MR. SIMPKINS:  YES.  GOOD MORNING, MA'AM, AND THANK

13   YOU FOR ALLOWING ME TO SPEAK.

14           THE COURT:  COME A LITTLE CLOSER TO THE MICROPHONE.

15   IT WILL HELP ME, SIR.

16           MR. SIMPKINS:  OH, I'M SORRY.

17           GOOD MORNING ONCE AGAIN.  CAN YOU HEAR ME?

18           THE COURT:  YES, I CAN.  THANK YOU, MR. SIMPKINS.

19           MR. SIMPKINS:  YOUR HONOR, I'D LIKE TO APOLOGIZE FOR

20   MY ROLE IN THIS CASE, TO THE UNITED STATES, TO THE COURT, AND

21   TO MY FAMILY.  I WAS LIVING A RETIRED LIFE WHEN I WAS

22   ARRESTED, YOU KNOW, SO YOU CAN IMAGINE HOW THIS AFFECTED ME,

23   HAVING A TWO-YEAR-OLD SON.  I GREW UP WITHOUT A FATHER.  I

24   DON'T WANT MY SON TO GROW UP WITHOUT A FATHER.  THERE'S NO

25   GUARANTEE IN FIVE YEARS THAT I'LL SURVIVE FIVE YEARS IN

1    PRISON.  NO ONE KNOWS TOMORROW, ESPECIALLY WITH MY HEALTH.  I

2    HAVE A HISTORY OF FAMILY MEMBERS, WE DON'T NORMALLY GET OUT OF

3    OUR SIXTIES.  THAT'S JUST OUR HISTORY, AND THAT'S THE HEALTHY

4    PEOPLE, SO.  I CAN'T CHANGE THE PAST.  THAT WAS TEN YEARS AGO.

5    I MADE A BAD DECISION, AND HERE I AM TODAY.  SO I'M HERE TO

6    PAY THE PRICE FOR THAT.

7            THANK YOU.

8            THE COURT:  OKAY.  THANK YOU, MR. SIMPKINS.  I

9    APPRECIATE YOUR COMMENTS.

10           WHO'S GOING TO SPEAK FOR THE GOVERNMENT TODAY?

11           WHY DON'T YOU BOTH HAVE A SEAT SO THAT COUNSEL CAN

12   HAVE THE PODIUM?

13           AND PULL BOTH THOSE MIKES, COUNSEL, TOWARD EACH

14   OTHER.

15           MR. YOUNG:  JUDGE, THE ASPECT OF THIS CRIME THAT I

16   THINK IS MOST STRIKING COMPARED TO OTHER DEFENDANTS THE COURT

17   HAS SEEN IS THE SHEER AMOUNT OF MONEY THAT MR. SIMPKINS TOOK.

18   THIS IS A LOT MORE MONEY THAN ANYBODY ELSE THE COURT HAS SEEN

19   FOR SENTENCING.  THE PARTIES AGREE THAT MR. SIMPKINS RECEIVED

20   AT LEAST $300,000, AND THAT'S AN IMPORTANT FACT.  IT GOES TO

21   CULPABILITY, BECAUSE LEONARD FRANCIS IS EXTRAORDINARILY GOOD

22   AT VALUING CORRUPT ACTS ON THE PART OF OTHER PEOPLE, AND HE'S

23   PLACING A REALLY HIGH VALUE ON WHAT MR. SIMPKINS GAVE HIM, AND

24   WHATEVER MAY BE SAID OF LEONARD FRANCIS, HE IS NO FOOL AND

25   HE'S NOT GOING TO OVERPAY FOR A BRIBE PAYMENT THAT HE GIVES TO

1    SOMEBODY ELSE.

2              AND SO WHAT THE COURT HAS SEEN WITH THIS SUCCESSION

3    OF DEFENDANTS COMING BEFORE IT, TAKING THESE BRIBE PAYMENTS,

4    IS ESSENTIALLY A MARKETPLACE, AND THE MARKET HERE WITH THIS

5    $300,000 BRIBE PAYMENT IS SPEAKING, AND WHAT IT'S SAYING IS

6    THAT MR. SIMPKINS' CRIMES ARE REALLY, REALLY BAD AND REALLY

7    TERRIBLE.  SO I WOULD LIKE TO WALK THROUGH JUST A COUPLE OF

8    THOUGHTS ABOUT WHAT MAKES THIS PERSON, THIS PARTICULAR

9    DEFENDANT'S CRIMES SO TERRIBLE IN THIS CASE.

10             THE FIRST THING IS THAT THIS THAILAND CONTRACT THAT

11   MR. SIMPKINS AWARDED TO GDMA WAS EXTREMELY LUCRATIVE.  THE

12   NAVY ENDED UP PAYING 7.1 MILLION DOLLARS UNDER THE CONTRACT.

13   SO THE CONTRACT ITSELF HAD A LOT OF MONEY AT STAKE.  AND

14   MOREOVER, THE CONTRACT THAT MR. SIMPKINS AWARDED, IT WASN'T

15   JUST SEVEN MILLION DOLLARS, BUT IT PROVIDED LEONARD FRANCIS

16   AND GDMA AN OPPORTUNITY, A VEHICLE, TO COMMIT FRAUD.  FRANCIS

17   HAS ADMITTED TO TAKING OR STEALING OVER 35 MILLION DOLLARS IN

18   FRAUD PROCEEDS.  MUCH OF THAT, AT LEAST A SUBSTANTIAL PORTION

19   OF THAT CAN BE ATTRIBUTED TO THE CONTRACT THAT MR. SIMPKINS

20   LET THROUGH THE CORRUPTION.

21             BUT MR. SIMPKINS' ROLE WASN'T ONLY TO STEER CONTRACTS

22   TO LEONARD FRANCIS.  HE WAS AN ACTIVE PARTICIPANT IN THE FRAUD

23   SCHEME, AND WE KNOW THAT THROUGH SOME OF THE DOCUMENTS THAT WE

24   SUBMITTED IN CONNECTION WITH OUR SENTENCING BRIEF.  WE KNOW

25   THE COURT HAS REVIEWED THOSE, SO I WON'T BELABOR THEM.  BUT

1   WHAT THEY PAINT IS A PICTURE OF A MAN, A DEFENDANT IN THIS

2   CASE, WHO IS HELPING LEONARD FRANCIS ACCOMPLISH THE FRAUD

3   SCHEME.

4          SO IF WE LOOK AT THE DOCUMENT SUBMITTED AS EXHIBIT B,

5   THIS IS AN EXAMPLE OF SOMEBODY FROM THE FISC, WHICH IS A NAVY

6   ENTITY IN HONG KONG, BECOMING SUSPICIOUS OF GDMA'S PRACTICES,

7   AND THAT PERSON WANTED TO REVIEW GDMA'S INVOICES.  MR.

8   SIMPKINS SPRINGS INTO ACTION AND HE SHUTS THAT EFFORT DOWN,

9   AND WHAT HE ADMONISHES THAT INFERIOR OFFICER IS, DO NOT

10  REQUEST ANY INVOICES FROM THE SHIP.  DO NOT VIOLATE THIS

11  INSTRUCTION.  CONTACT THE SHIP AND RESCIND YOUR REQUEST.

12         ANOTHER EXAMPLE WE CAN SEE WE'VE ATTACHED AS EXHIBIT

13  C, AND THAT IS OF AN INSTANCE IN WHICH A LIEUTENANT IN THE

14  NAVY OBSERVED THAT GDMA'S BILLS WERE REALLY HIGH, AND SO WHAT

15  THAT LIEUTENANT PROPOSED TO DO WAS TO RECOMPETE, WHAT THEY

16  CALL RECOMPETE THE CONTRACT, OPEN IT UP FOR COMPETITIVE

17  BIDDING; MAYBE ANOTHER CONTRACTOR WILL HAVE A BETTER RATE.

18  MR. SIMPKINS DIDN'T WANT TO DO THAT, AND SO WHAT HE DID WAS

19  OVERRULE THAT LIEUTENANT AND AWARDED THE CONTRACT DIRECTLY TO

20  GDMA WITHOUT COMPETITIVE BIDDING FOR ANOTHER YEAR, ALLOWING

21  FRANCIS TO CONTINUE THE FRAUD SCHEME ON THAT CONTRACT.

22         AND I THINK THE THIRD THING THAT IS REALLY STRIKING

23  IS THE DOCUMENT MARKED AS EXHIBIT D, AND YOU RECALL FROM MR.

24  FRANCIS' PLEA ALLOCUTION THAT ONE OF THE ASPECTS OF THE SCHEME

25  HE WAS ENGAGED IN WAS TO INFLATE THE VOLUME OF LIQUID WASTE

1    THAT HE REMOVED FROM THE SHIP, AND SO SOMEBODY HAD THE

2    SENSIBLE IDEA, WELL, LET'S PUT SOME METERS ON THE TUBE THAT

3    TAKES OUT THE WASTE AND WE'LL MEASURE AND WE'LL FIND OUT

4    WHETHER HE'S INFLATING.  WELL, MR. SIMPKINS KNOWS THAT

5    LEONDARD IS RUNNING A SCHEME HERE, AND SO HE ADMONISHES, TELLS

6    THAT PERSON, YOU'VE GOT TO TAKE DOWN THOSE METERS.  AND NOW

7    THE NAVY IS FLYING BLIND.  THEY'RE AT THE MERCY OF LEONDARD'S

8    WORD FOR HOW MUCH IS BEING BILLED.

9         AND I THINK THESE THINGS, THREE THINGS TAKEN TOGETHER

10   ARE REALLY A PROBLEM FOR MR. SIMPKINS, BECAUSE THINK OF IT

11   FROM THE PERSPECTIVE OF THESE THREE RELATIVELY JUNIOR

12   OFFICERS.  THESE PEOPLE WERE DOING NOTHING OTHER THAN WHAT A

13   TAXPAYER WOULD EXPECT THEM TO DO, TRYING TO BE GOOD STEWARDS

14   OF THE NAVY AND THE TAXPAYERS' MONEY, AND WHAT HAPPENED?  THEY

15   RAN INTO RESISTANCE FROM MR. SIMPKINS, WHO BELITTLED THEM AND

16   ADMONISHED THEM AND TOLD THEM NOT TO TAKE THESE PRECAUTIONS,

17   AND THAT BREEDS AN ATMOSPHERE OF CYNICISM AMONGST PEOPLE THAT,

18   YOU KNOW WHAT?  I'M NOT GOING TO WORRY ABOUT IT.  MY SUPERIORS

19   DON'T CARE ABOUT THE PUBLIC FISC, SO WHY SHOULD I BOTHER?

20   THAT'S A REALLY DANGEROUS MINDSET THAT MR. SIMPKINS PROMOTED

21   AND PERPETUATED IN THE NAVY.  SO WHAT THIS IS ABOUT IS THE

22   NATURE OF THE CRIME ITSELF THAT IS SO ABHORRENT, IN OUR VIEW.

23        ONE THING THAT STANDS OUT TO ME IS THAT THIS CRIME

24   THAT MR. SIMPKINS DID CREATED A SELF-SUSTAINING, A

25   SELF-PERPETUATING CYCLE OF FRAUD AND CORRUPTION.  THE REASON

1    IS BECAUSE MR. SIMPKINS AWARDS A CONTRACT THROUGH CORRUPTION,

2    BUT IT DOESN'T END THERE.  THE CRIME DOESN'T STOP THERE,

3    BECAUSE LEONARD FRANCIS CONTINUES TO DEFRAUD THE CONTRACT AND

4    OTHER PEOPLE IN THE NAVY, LIKE JOHN BELIVEAU, NEED TO TAKE

5    BRIBE PAYMENTS TO ALLOW THE CORRUPTION TO CONTINUE, AND INDEED

6    WHAT WE'VE SEEN IS THAT LEONARD FRANCIS PAID THESE BRIBE

7    PAYMENTS FROM MONEY, FRAUDULENT MONEY, GENERATED FROM FRAUD ON

8    THE CONTRACT.

9            AND WHEN WE WERE HERE FOR MR. BELIVEAU, HIS PLEA

10   ALLOCUTION SAID THAT ONE OF THE THINGS HE PROVIDED TO LEONARD

11   FRANCIS WAS NCIS INTERVIEW REPORTS.  ONE OF THOSE INTERVIEW

12   REPORTS -- IN FACT, I THINK A COUPLE OF INTERVIEW REPORTS

13   PERTAIN TO THE NAVY'S INVESTIGATION OF THIS THAILAND CONTRACT

14   THAT MR. SIMPKINS AWARDED THROUGH CORRUPTION, AND SO THIS IS A

15   CASE IN WHICH CORRUPTION BEGAT CORRUPTION.

16           AND ANOTHER EXAMPLE IS A DEFENDANT NAMED BOBBY PITTS,

17   WHO'S BEEN INDICTED FOR OBSTRUCTION IN THIS CASE.  MR. PITTS

18   HAS PLED NOT GUILTY, BUT THE ALLEGATION IN THAT CASE IS THAT

19   MR. PITTS WAS PROVIDING INTERVIEW REPORTS TO MR. FRANCIS THAT

20   PERTAINED TO THIS CONTRACT, AND SO THE WAY I THINK OF IT IS

21   MR. SIMPKINS ESSENTIALLY UNLEASHING A PANDORA'S BOX OF FRAUD.

22   HE STARTED THIS AND IT SNOWBALLED AND IT GOT COMPLETELY OUT OF

23   CONTROL, AND HE ABSOLUTELY KNEW THAT HIS ACTS WOULD NOT BE THE

24   ONLY CRIME THAT HAPPENED IN THE CHAIN OF EVENTS.

25           THE SECOND OBSERVATION I HAVE ON THE NATURE OF THE

1   OFFENSE IS THAT ALL OF THESE CRIMES, AND IN PARTICULAR MR.

2   SIMPKINS, REALLY ERODE THE PUBLIC'S CONFIDENCE IN THEIR

3   GOVERNMENT.  PEOPLE LOOK AT THIS AND THEY SAY, YOU KNOW WHAT?

4   THESE PEOPLE IN THE NAVY, THEY DON'T KNOW.  THEY'RE NOT GOOD

5   STEWARDS OF OUR MONEY.  THEY DON'T CARE ABOUT OUR HARD-EARNED

6   TAX DOLLARS.  AND THAT BREEDS CYNICISM TOWARDS PUBLIC SERVANTS

7   AND PEOPLE TRYING TO ACT IN THE PUBLIC GOOD.

8           AND IT ALSO MAKES -- IF YOU LOOK AT IT FROM THE

9   PERSPECTIVE OF ANOTHER BIDDER, I MEAN, THERE WERE OTHER FIRMS

10  BIDDING ON THESE CONTRACTS THAT THIS ONE WAS DOLING OUT HERE,

11  AND THEY WOULD HAVE TO LOOK AT IT AND SAY, THE PROCUREMENT

12  PROCESS IS RIGGED AGAINST ME.  IT JUST -- IT LOOKS -- IT DOES

13  NOT, IT DOES NOT BECOME A COUNTRY LIKE OURS THAT THESE

14  CONTRACTS ARE GETTING LET OUT THE WAY THEY WERE.

15          AND FINALLY, IT ERODES PUBLIC CONFIDENCE OF PUBLIC

16  SERVANTS.  I MEAN, THESE RELATIVELY JUNIOR PEOPLE I'VE TALKED

17  ABOUT, IT MUST HAVE BEEN TERRIBLY DEMORALIZING FOR THEM TO TRY

18  TO DO THE RIGHT THING, TO TRY TO DO THE RESPONSIBLE THING, AND

19  HAVE MR. SIMPKINS DO NOTHING BUT INTERFERE WITH THEM.

20          MR. LEMON HAS MADE SOME POINTS ABOUT MR. SIMPKINS'

21  PERSONAL CHARACTERISTICS, AND HE'S MADE SOME FAIR ARGUMENTS.

22  IN FACT, HE'S PROBABLY MADE SOME GOOD ARGUMENTS, AND WE AGREE

23  WITH MANY OF THE ARGUMENTS THAT HE'S MADE.  BUT WHERE WE PART

24  COMPANY IS THE FACT THAT OUR SENTENCING RECOMMENDATION DOES

25  ACCOUNT FOR THAT, AND THE WAY WE TRY TO ACCOUNT FOR IT IS BY

1    GIVING MR. SIMPKINS TWO POINTS UNDER 5K2.0.  AND SO THE COURT

2    SHOULD CONSIDER MANY OF THESE ARGUMENTS THAT MR. LEMON HAS

3    RAISED, BUT THE WAY TO DO THAT IS TO BUILD IT INTO THE 5K2.0

4    POINTS THAT THE PLEA AGREEMENT SETS FORTH.

5         AND FRANKLY, ANOTHER WAY WE'VE TRIED TO ACCOUNT FOR

6    IT IS BY RECOMMENDING A MID-LEVEL GUIDELINE RANGE.  WHAT WE'RE

7    ASKING FOR IS THE EXACT MIDDLE OF THE GUIDELINES, WHICH WOULD

8    BE 78-AND-HALF MONTHS.  I THINK SOMEBODY WITHOUT HIS PERSONAL

9    CHARACTERISTICS WOULD PROBABLY MERIT SOMETHING CLOSER TO THE

10   HIGH END OF THE GUIDELINES.  SO WE THINK THAT OUR

11   RECOMMENDATION DOES TAKE THIS INTO CONSIDERATION.

12        MR. LEMON COMPARED, TALKED ABOUT SENTENCING

13   DISPARITIES, AND WE THINK THAT IF THE COURT LOOKS TO PEOPLE

14   LIKE MR. DUSEK, WHO GOT 48 MONTHS; MR. MISIEWICZ --

15        THE COURT:  HE GOT 46 MONTHS.

16        MR. YOUNG:  I'M SORRY.  46 MONTHS.

17        MR. MISIEWICZ, HE GOT 78 MONTHS, AND THAT INCLUDED A

18   FOUR-LEVEL UPWARD DEPARTURE FOR THE SHIP SCHEDULES.  I THINK

19   WHAT DISTINGUISHES MR. SIMPKINS FROM THESE TWO DEFENDANTS,

20   WHOSE CRIMES WERE TERRIBLE, CLEARLY, BUT WHAT DISTINGUISHES

21   MR. SIMPKINS IS, HE WAS NOT ISOLATED IN TERMS OF HIS CRIME.

22   NOT ONLY WAS HE TAKING A BRIBE, BEING INVOLVED WITH THE

23   BRIBERY ASPECT OF THE CASE, BUT HE WAS ALSO INVOLVED IN THE

24   FRAUD ASPECT OF THE CASE, WHICH IS A LITTLE DIFFERENT,

25   CERTAINLY, THAN SOMEBODY LIKE DAN DUSEK, WHO HAD MORE OF A

1    BILATERAL RELATIONSHIP WITH FRANCIS, PROVIDING THINGS, SHIP

2    SCHEDULES, IN EXCHANGE FOR MONEY.

3          WE THINK THAT MR. SIMPKINS IS MORE CLOSELY SITUATED

4    TO SOMEBODY LIKE JOHN BELIVEAU, AND THE REASON THAT MR.

5    SIMPKINS IS MORE, CLOSER TO JOHN BELIVEAU THAN HE IS TO DAN

6    DUSEK IS BECAUSE BELIVEAU, LIKE SIMPKINS, HAD A WIDER RANGE, A

7    WIDER VIEW OF THE FRAUD IN TERMS OF THE CORRUPTION AND THE

8    FRAUD ANGLE.  NOW, WE'RE NOT SAYING THAT THEY'RE THE SAME, BUT

9    THEY BOTH HAVE ONE THING IN COMMON, WHICH IS A HISTORY OF

10   MEDICAL PROBLEMS THAT THE COURT CONSIDERED.  THERE ARE NUMBER

11   OF THINGS THAT MAKE MR. BELIVEAU WORSE IN SOME RESPECTS.

12   HOWEVER, THERE WAS AN UNDER-SEAL FILING IN MR. BELIVEAU'S

13   CASE.  SO WE'RE NOT ASKING FOR THE SAME SENTENCE FOR MR.

14   BELIVEAU, BUT WE WOULD SUBMIT THAT MR. SIMPKINS IS A LITTLE

15   BIT CLOSER TO MR. BELIVEAU THAN HE IS TO SOMEBODY LIKE DAN

16   DUSEK.

17          THE LAST POINT I'D LIKE TO ADDRESS THAT MR. LEMON

18   RAISED, AND I THINK MR. SIMPKINS HIMSELF RAISED, WAS, THEY

19   DESCRIBED HIS CONDUCT AS A TERRIBLE MISTAKE, AND WE THINK THAT

20   THAT REALLY UNDERSTATES WHAT MR. SIMPKINS DID, BECAUSE THIS

21   WAS A CRIME THAT WENT ON FOR A WHILE.  THERE WERE MULTIPLE

22   BRIBES.  IT WAS NOT A SIMPLE CRIME.  THIS IS A CASE IN WHICH

23   MR. SIMPKINS AND MR. FRANCIS MADE UP A PHONY COVER STORY ABOUT

24   AN INVESTMENT VEHICLE TO TRY TO DISGUISE THE TRUE NATURE OF

25   THE PAYMENTS COMING IN.  WE HAD MR. SIMPKINS USING HIS WIFE'S

1    ACCOUNT IN JAPAN AND THEN TAKING THE MONEY, SENDING IT

2    OVERSEAS TO AN ACCOUNT THAT HE HELD, I THINK, IN TEXAS, AND SO

3    THAT SHOWS A HIGH LEVEL OF CULPABILITY.  THIS ISN'T SOMEBODY

4    WHO JUST MADE A MISTAKE, MADE A BAD JUDGMENT.  THIS IS

5    SOMEBODY, A REALLY SMART GUY WHO REALLY, WHO PUT A LOT OF

6    THOUGHT INTO THIS, AND THAT IS MORE THAN JUST A MISTAKE.

7    THAT'S A PATTERN OF CONDUCT THAT MAKES HIM MORE CULPABLE.

8            THE FINAL POINT, JUDGE, I'D LIKE TO RAISE IS THAT MR.

9    SIMPKINS IS NOT GOING TO BE (PAUSE) -- THERE ARE PEOPLE AROUND

10   THE WORLD THAT WORK AT THE DEPARTMENT OF DEFENSE AND THE

11   PENTAGON THAT ARE ENTRUSTED WITH ADMINISTERING CONTRACTS.

12   THEY WORK IN PLACES IN ASIA.  THEY WORK ALL OVER THE WORLD,

13   AND THEY WILL BE CONFRONTED, HOPEFULLY NOT OFTEN, BUT

14   SOMETIMES THEY WILL BE CONFRONTED WITH THE TEMPTATION TO AWARD

15   A CORRUPT CONTRACT, AS MR. SIMPKINS DID, AND TO DETER THAT, TO

16   ACHIEVE GENERAL DETERRENCE, THE COURT NEEDS TO IMPOSE, WE

17   SUBMIT, A SERIOUS SENTENCE IN THIS CASE.

18           THAT'S ESPECIALLY TRUE BECAUSE SOMEBODY LIKE MR.

19   SIMPKINS WAS A SUPERVISOR.  OKAY?  AT THE END OF HIS CAREER,

20   HE WAS A SENIOR EXECUTIVE SERVICE EMPLOYEE.  THAT'S A VERY BIG

21   DEAL.  THAT'S ABOUT AS HIGH AS YOU CAN GET IN THE CIVIL

22   SERVICE WITHOUT BEING A POLITICAL APPOINTEE, AND SO THERE

23   WEREN'T MANY PEOPLE TO CATCH MR. SIMPKINS.  HE WAS SORT OF --

24   HE WAS THE BOSS, AND WHEN SOMEBODY IS ABLE TO OPERATE WITH AS

25   MUCH AUTONOMY AS MR. SIMPKINS DID, WHEN THEY GET CAUGHT DOING

1    SOMETHING WRONG, A STIFF SENTENCE IS NECESSARY TO ACHIEVE

2    GENERAL DETERRENCE FOR OTHER PEOPLE THAT ARE SIMILARLY

3    SITUATED.

4              MR. PLETCHER:  IF I MIGHT JUST --

5              THE COURT:  THANK YOU VERY MUCH, COUNSEL.

6              DO YOU WANT TO PASS IT TO MR. PLETCHER?

7              MR. YOUNG:  IS THERE ANYTHING ELSE?

8              MR. PLETCHER:  NOTHING SUBSTANTIVELY, YOUR HONOR.  I

9    WAS JUST GOING TO ADD A FEW WORDS ABOUT THE RESTITUTION AND

10   FORFEITURE TO MAKE SURE THAT THOSE ITEMS WERE HANDLED

11   PROPERLY.

12             THE COURT:  OKAY.

13             MR. PLETCHER:  SO THE PLEA AGREEMENT CALLS FOR AN

14   ORDER OF RESTITUTION OF $450,000.  MR. LEMON'S CORRECT THAT

15   MR. SIMPKINS HAS MADE PAYMENT OF $300,000 PRESENTENCING.  THE

16   GOVERNMENT WILL TAKE THE STEPS NECESSARY TO REMIT THAT MONEY

17   IN FURTHERANCE AND IN PAYMENT OF THE RESTITUTION ORDER, BUT

18   THE COURT'S ORDER NEEDS TO BE FOR THE FULL AMOUNT OF $450,000

19   SO WE CAN DO THAT.

20             THE COURT IN THIS CASE ALSO ENTERED A PRELIMINARY

21   ORDER OF FORFEITURE IN THE AMOUNT OF $300,000.  THAT AMOUNT,

22   AS MR. LEMON NOTED, HAS BEEN PAID IN FULL.  THE OUTSTANDING

23   BALANCE AS ENVISIONED BY THE FORFEITURE ADDENDUM IS $150,000,

24   AND SO THE UNITED STATES WILL SUBMIT TODAY A MOTION, I GUESS

25   MAYBE AN AMENDED MOTION, AN AMENDED JUDGMENT OF FORFEITURE IN

1   THE REMAINING AMOUNT OF $150,000, AND THEN ASK THE COURT TO

2   ENTER THAT NOW FINAL ORDER OF FORFEITURE OF A MONEY JUDGMENT

3   IN THE AMOUNT OF A $150,000.

4            THE COURT:  THE $150,000 SHOULD BE THE FORFEITURE

5   ORDER TODAY, WITH THE RESTITUTION REMAINING AT 450, BUT WE

6   KNOW THAT 300,000 HAS BEEN PAID.

7            MR. PLETCHER:  YES, SO THE UNITED STATES CAN TAKE THE

8   STEPS, LIKE I MENTIONED, TO TAKE THAT MONEY THAT'S BEEN SENT

9   TO THE MARSHAL'S OFFICE AND REMIT, I THINK IS THE PROPER

10  TERMINOLOGY, THAT MONEY TO THE UNITED STATES NAVY PURSUANT TO

11  THE RESTITUTION ORDER AND MAKE SURE THAT THAT'S CREDITED TO

12  MR. SIMPKINS' BENEFIT.  SO I THINK THAT'S HOW THE FINANCIAL

13  PIECES WORK OUT.

14           AND WITH THAT, I'LL PASS IT BACK TO MR. YOUNG FOR

15  ANYTHING ELSE.

16           THE COURT:  LET ME ASK, THE DEFENSE WAS ASKING FOR NO

17  FINE.  DID THE GOVERNMENT WANT TO ADDRESS THE FINE?

18           MR. YOUNG:  YES, I CAN ADDRESS THE FINE, JUDGE.

19           THE COURT:  OKAY.

20           MR. YOUNG:  MR. SIMPKINS, I THINK, IS VERY DIFFERENT

21  THAN, I WOULD GUESS, ALMOST ANY DEFENDANT THE COURT TYPICALLY

22  SEES IN THAT HIS FINANCIAL CONDITION IS ACTUALLY PRETTY GOOD,

23  AND WHAT WE KNOW FROM THE PSR IS THAT MR. SIMPKINS, IN AUGUST,

24  HAD A BALANCE OF ABOUT $300,000 IN HIS THRIFT SAVINGS ACCOUNT,

25  WHICH IS A 401(K), AND MR. LEMON HAS POINTED OUT THAT IF MR.

1    SIMPKINS WERE TO ACCESS THAT FUND, HE WOULD PAY A PENALTY, AND

2    THAT'S TRUE.  HE WOULD HAVE TO PAY AN INTEREST PENALTY, AND I

3    THINK OUR ANSWER TO THAT IS, WELL, THEN, PAY THE PENALTY,

4    BECAUSE YOU OWE A BALANCE ON YOUR RESTITUTION.  AND SO WE

5    THINK THAT MR. SIMPKINS COULD GO AND ACCESS SOME OF THOSE

6    FUNDS, AT LEAST FOR A $50,000 FINE.

7         AND WE WOULD ALSO NOTE THAT MR. SIMPKINS IS VERY

8    FORTUNATE INSOFAR AS HE HAS A PENSION, WHICH MANY PEOPLE DON'T

9    HAVE, AND SO HE IS GOING TO HAVE AN INCOME OF $60,000 FOR THE

10   REST OF HIS LIFE.  WE THINK THAT MEANS HE CAN PAY A $50,000

11   FINE.

12        THE COURT:  OKAY.  THANK YOU VERY MUCH, COUNSEL.

13        FROM PROBATION.

14        THE PROBATION OFFICER:  PROBATION SUBMITS ON THE

15   RECOMMENDATION THAT'S IN THE PRESENTENCE REPORT.

16        THE COURT:  OKAY.  VERY GOOD.

17        MR. LEMON, WHY DON'T YOU AND MR. SIMPKINS COME BACK

18   TO THE PODIUM, AND NOW IT'S THE COURT'S TURN TO COMMENT.

19        MR. LEMON:  YOUR HONOR, CAN I BRIEFLY RESPOND TO A

20   COUPLE OF THINGS?

21        THE COURT:  CERTAINLY.  IF YOU WOULD LIKE TO RESPOND,

22   GO AHEAD, SIR.

23        MR. LEMON:  OKAY.  FIRST OF ALL, WITH RESPECT TO THE

24   GUIDELINE RANGE, COUNSEL ALLUDED TO THE STIPULATED DEPARTURE

25   IN THIS CASE, BUT I JUST WANT TO POINT OUT AGAIN THAT

1    PROBATION DIDN'T AWARD ANY DEPARTURE TO MR. SIMPKINS.  THEY

2    ARRIVED AT A HIGHER GUIDELINES RANGE, YET NONETHELESS

3    RECOMMENDED A BELOW-GUIDELINES SENTENCE OF 60 MONTHS.  SO THE

4    VARIANCE THAT PROBATION RECOMMENDED IS ACTUALLY GREATER THAN

5    THE ONE THAT I'M ASKING THE COURT TO GO WITH.

6          JUST A COUPLE OF THINGS THAT I WANTED TO ADDRESS.

7    THE FIRST THING THAT THE PROSECUTOR STATED IS THAT WE KNOW

8    THAT WHAT MR. SIMPKINS DID FOR MR. FRANCIS HAD VALUE BECAUSE

9    FRANCIS IS NOT A FOOL.  WELL, OF COURSE IT HAD VALUE.  I MEAN,

10   THAT NECESSARILY -- I MEAN, THAT GOES WITHOUT SAYING.  BUT THE

11   GOVERNMENT IS BASICALLY SAYING THAT YOUR HONOR SHOULD EVALUATE

12   WHAT MR. SIMPKINS DID AND VALUE IT BASED ON WHAT LEONARD

13   FRANCIS THOUGHT IT WAS WORTH.  I MEAN, I DON'T REALLY THINK

14   THAT'S THE PROPER TEST.  THE TEST IS, WHAT DID HE DO RELATIVE

15   TO THE OTHER CO-DEFENDANTS IN THIS CASE?  WE'RE NOT DENYING

16   IT'S NOT SERIOUS.

17         THE COURT:  NO, I UNDERSTAND.  YOU SEE THEIR POINT,

18   THOUGH.  THE MASTERMIND OF THIS WHOLE SCHEME WAS LEONARD

19   FRANCIS, AND HE VALUED EVERYBODY'S PART IN THIS AND HE PAID

20   THEM ACCORDINGLY, AND DID WHAT HE NEEDED TO DO TO KEEP THIS

21   SCHEME AFLOAT FOR AS LONG AS HE COULD.  SO THEY'RE JUST SAYING

22   IT.  AND I AGREE WITH YOU.  IT IS NOT THE TEST, BUT IT'S A

23   FAIR OBSERVATION TO SAY, WHAT HE PAID PEOPLE WAS THEIR VALUE

24   BECAUSE HE WASN'T A FOOL IN THIS, BECAUSE IT WORKED FOR A LONG

25   TIME.

1          MR. LEMON:  WELL, THAT'S CERTAINLY TRUE, BUT AGAIN

2     WE'RE TALKING ABOUT FRAUD.  SO IT'S QUITE POSSIBLE --

3          THE COURT:  UNDERSTOOD, UNDERSTOOD.

4          MR. LEMON:  -- THAT HE WAS ABLE TO UNDERPAY PEOPLE

5     RELATIVE TO THEIR VALUE, AND PROBABLY CONSISTENTLY ENDEAVORED

6     TO DO SO.

7          THE COURT:  NO, I UNDERSTAND.

8          MR. LEMON:  WITH RESPECT TO -- THE PROSECUTOR MADE A

9     STATEMENT THAT THIS WAS A PANDORA'S BOX OF FRAUD THAT WAS

10    INITIATED BY MR. SIMPKINS.  WELL, AGAIN, IT WASN'T.  IT WAS

11    INITIATED BY LEONARD FRANCIS.  I MEAN, THAT'S, THAT'S THE

12    LARGER POINT HERE.

13         AND THEN THE PROSECUTOR REFERENCED THAT, UNLIKE SOME

14    OF THE OTHER DEFENDANTS, MR. SIMPKINS WAS INVOLVED IN BOTH

15    BRIBERY AND FRAUD.  THEY'RE PARSING THIS A LITTLE FINELY.  I

16    DON'T SEE HOW YOU CAN BE INVOLVED IN THE BRIBERY WITHOUT BEING

17    INVOLVED IN THE FRAUD.  I MEAN, IF YOU'RE ACCEPTING BRIBES

18    FROM LEONARD FRANCIS, YOU'RE NECESSARILY INVOLVED IN FRAUD.

19         AND THEN, FINALLY, THE PROSECUTOR SAID, WELL, I THINK

20    DEFENSE COUNSEL AND MR. SIMPKINS UNDERSTATE IT WHEN THEY SAY

21    THAT MR. SIMPKINS MADE A TERRIBLE MISTAKE.  WELL, I MEAN, WHAT

22    ELSE ARE WE GOING TO CALL IT?  I MEAN, IT'S THE MOST TERRIBLE

23    THING HE'S DONE IN HIS LIFE.  I DON'T KNOW REALLY WHAT ELSE WE

24    CAN SAY.  HE'S PLED GUILTY TO CONSPIRACY.  WE'RE NOT

25    MINIMIZING ANY OF THAT.  SO ULTIMATELY, AGAIN, WHAT MR.

1    SIMPKINS DID JUST COULD NOT HAVE BEEN AS GRAVE A BREACH AS

2    WHAT COMMANDER MISIEWICZ, AND I KNOW I'M MISPRONOUNCING THAT,

3    DID WITH RESPECT TO DIVULGING SECRETS ABOUT NUCLEAR WEAPONS.

4           SO WITH ALL THAT, YOUR HONOR, I DO BELIEVE THAT A

5    60-MONTH SENTENCE IS THE APPROPRIATE SENTENCE HERE.

6           THE COURT:  OKAY.  THANK YOU.

7           WELL, THE COURT HAS ADEQUATE INFORMATION TO EXERCISE

8    SENTENCING DISCRETION THIS MORNING, AND AS I SAID, I

9    UNDERSTAND THE SCHEME THAT WENT ON HERE, AND EVERYBODY'S GOT A

10   UNIQUE ROLE IN THIS.  AND WHAT OCCURRED WITH YOUR CONDUCT, MR.

11   SIMPKINS, WAS UNIQUE FROM EVERYBODY ELSE'S.  WHAT WAS

12   DIFFERENT ABOUT WHAT YOU DID AS I LOOKED AT THE FACTS OF YOUR

13   CASE IS, YOU WERE SOMEWHAT PREMEDITATED AND EXTRAORDINARILY

14   THOUGHTFUL IN THE WAY THAT YOU PASSED THE MONEY THROUGH YOUR

15   SPOUSE'S ACCOUNT AND CAME UP WITH THIS SCHEME OF THE

16   REAL-ESTATE INVESTMENT TO KIND OF BE THE COVER, IF YOU WILL.

17   SO YOU CLEARLY KNEW WHAT YOU WERE DOING AND ATTEMPTED TO

18   CONCEAL IT AS BEST YOU COULD.

19          AND CONDUCT LIKE THAT, MR. SIMPKINS, DESTROYS THE

20   PUBLIC'S CONFIDENCE BOTH IN OUR MILITARY AND IN OUR

21   GOVERNMENT, AND THAT'S THE ULTIMATE TRAGEDY OF ACTIONS SUCH AS

22   YOURS.  AND TO SAY IT'S UNFORTUNATE IS AN UNDERSTATEMENT, SIR.

23   I UNDERSTAND YOUR UPBRINGING.  I UNDERSTAND WHAT YOU

24   EXPERIENCED IN LIFE, AND IT'S ALL GOING TO BE TAKEN INTO

25   ACCOUNT, AND I'LL BEGIN BY GOING THROUGH THE GUIDELINES AND

1    EXPLAINING AS I DO THIS.

2         THE BASE OFFENSE LEVEL IS A 14.  BECAUSE MORE THAN

3    ONE BRIBE WAS INVOLVED, A PLUS TWO IS ADDED.  BECAUSE THE LOSS

4    WAS GREATER THAN $250,000, A PLUS 12 IS ADDED.  BECAUSE YOU

5    WERE A PUBLIC OFFICIAL, A PLUS FOUR IS ADDED.  THE RESULT OF

6    ALL OF THAT IS AN ADJUSTED OFFENSE LEVEL OF 32.  YOU'VE

7    ACCEPTED RESPONSIBILITY FOR WHAT YOU DID HERE, AND I WOULD

8    SUBMIT THAT'S THE BETTER COURSE OF CONDUCT WHEN A BAD MISTAKE

9    IS MADE SUCH AS THIS.  IT'S A THREE-POINT REDUCTION, TAKING ME

10   TO THE TOTAL OFFENSE LEVEL OF 29.  YOU HAVE NO CRIMINAL

11   HISTORY POINTS.  YOU'RE IN CRIMINAL HISTORY CATEGORY I, AND 29

12   AND I [ONE] IS A RANGE OF 87 TO 108 MONTHS.  THERE'S AN

13   AGREEMENT BETWEEN YOUR COUNSEL AND THE GOVERNMENT FOR A

14   TWO-POINT COMBINATION DEPARTURE, TO A 27.

15        SO THE QUESTION BECOMES, WHAT, IF ANY, DISCRETION

16   SHOULD THIS COURT EXERCISE TO GO BELOW A GUIDELINE RANGE,

17   WHICH IS BASICALLY AT 70 TO 87 MONTHS?  AND SO I LOOK AT THE

18   TOTALITY OF WHAT YOU BRING BEFORE ME, MR. SIMPKINS -- WHAT I

19   READ ABOUT IN YOUR UPBRINGING IN THE SOUTH; YOUR GOOD CONDUCT

20   AND PUBLIC SERVICE UP TO THIS POINT; THE NATURE OF THIS

21   OFFENSE; THE CIRCUMSTANCES OF THIS OFFENSE; THE NEED TO

22   GENERALLY DETER PEOPLE AND SPECIFICALLY DETER YOU; AND THE

23   IMPACT AND THE NEED TO PROTECT THE PUBLIC -- AND I REMAIN AT

24   THIS GUIDELINE RANGE OF 70 TO 87 MONTHS.  I THINK IT'S THE

25   APPROPRIATE RANGE FOR THE CONDUCT AS I UNDERSTAND IT, AND I'M

1   GOING TO IMPOSE 72 MONTHS IN THE CUSTODY OF THE BUREAU OF

2   PRISONS.

3          NOW, WHILE YOU'RE IN CUSTODY, I'M GOING TO RECOMMEND

4   THE RDAP PROGRAM, SIR, AND YOU'LL BE EVALUATED FOR THAT, AND

5   IT WILL BE DETERMINED, YOU KNOW, IF YOU GET INTO THE PROGRAM.

6   IF YOU GET INTO THE PROGRAM AND SUCCESSFULLY COMPLETE IT, SIR,

7   THAT WILL CARRY A CREDIT AGAINST CUSTODIAL TIME THAT YOU HAVE

8   TO SERVE, AND I KNOW MR. LEMON HAS DISCUSSED THAT WITH YOU.

9   THERE ARE ALSO MANY PRODUCTIVE THINGS THAT YOU CAN DO WHILE

10  YOU'RE IN CUSTODY.

11         I WILL CERTAINLY RECOMMEND WHAT YOU REQUESTED, AND

12  THAT WOULD BE THE WESTERN DISTRICT OF VIRGINIA, SO YOU CAN BE

13  NEAR FAMILY AND FRIENDS THERE.

14         I WILL ALSO BE HAPPY TO REQUEST ON YOUR BEHALF THE

15  MAXIMUM RRC PLACEMENT FOR YOU, SIR.

16         I'M GOING TO IMPOSE A THREE-YEAR PERIOD OF

17  SUPERVISION.

18         THE FORFEITURE OF A HUNDRED -- THE FORFEITURE NEEDS

19  TO BE LISTED AT $150,000 TODAY, BECAUSE HE'S ALREADY PAID THE

20  BALANCE.  CORRECT?

21         MR. PLETCHER:  YES, YOUR HONOR, AND WE'LL SUBMIT

22  SEPARATE PAPERS ON THAT IN THE FORM OF A MOTION.

23         THE COURT:  OKAY.  SO THE FORFEITURE IS AT 150,000.

24  THE RESTITUTION, EVEN THOUGH YOU HAVE PAID MORE THAN HALF OF

25  IT, TO THE TUNE OF $300,000, NEEDS TO BE THE FULL AMOUNT UNTIL

1    IT'S CREDITED TO THAT ACCOUNT.  SO THE RESTITUTION REMAINS AT

2    $450,000.

3             I AM GOING TO IMPOSE A FINE, AND IT WILL BE $50,000.

4             THE SPECIAL ASSESSMENT, BECAUSE THERE ARE TWO COUNTS,

5    IS $200.  I SHOULD INDICATE THAT THIS IS EACH COUNT TO RUN

6    CONCURRENTLY ON THIS MATTER.

7             MR. PLETCHER:  YOUR HONOR, I'M SORRY.  I THINK THE

8    STATUTORY MAXIMUM FOR COUNT ONE IS 60 MONTHS.

9             THE COURT:  IS 60 MONTHS?  OKAY.  SO IT'S 60 MONTHS

10   ON COUNT ONE TO RUN CONCURRENT WITH THE 72 ON THE SECOND

11   COUNT.

12            THANK YOU.

13            WITH REGARD TO THE PERIOD OF SUPERVISION, SIR, ALL

14   THE STANDARD CONDITIONS OF SUPERVISION APPLY, IN ADDITION TO

15   THE FOLLOWING SPECIAL CONDITIONS.

16            THE FIRST IS A CONTINUATION OF THE RDAP PROGRAM, SIR.

17   SO YOU WOULD CONTINUE TO PARTICIPATE IN A DRUG- AND

18   ALCOHOL-ABUSE TREATMENT PROGRAM, INCLUDING TESTING AND

19   COUNSELING AS DIRECTED BY PROBATION.  YOU MIGHT BE REQUIRED TO

20   PAY FOR SOME OF THESE SERVICES, BUT ONLY IF YOU HAVE THE

21   ABILITY TO DO SO.

22            THE SECOND CONDITION IS TO REPORT ALL VEHICLES THAT

23   YOU OWN OR OPERATE OR IN WHICH YOU HAVE AN INTEREST TO

24   PROBATION.

25            THE THIRD IS TO SUBMIT YOUR PERSON, YOUR PROPERTY,

1   YOUR RESIDENCE, YOUR OFFICE, YOUR VEHICLE TO A SEARCH

2   CONDUCTED BY PROBATION, PROVIDED THE SEARCH IS DONE AT A

3   REASONABLE TIME, IN A REASONABLE MANNER, BASED ON A REASONABLE

4   SUSPICION OF CONTRABAND OR EVIDENCE OF A VIOLATION OF A

5   CONDITION OF YOUR SUPERVISED RELEASE.  IF YOU DON'T AGREE TO A

6   SEARCH, MR. SIMPKINS, THAT CAN BE GROUNDS FOR REVOKING YOUR

7   SUPERVISION, AND WHOEVER YOU LIVE WITH MUST KNOW THAT THE HOME

8   IS SUBJECT TO SEARCH.

9          YOU MUST PROVIDE COMPLETE DISCLOSURE OF PERSONAL AND

10  BUSINESS FINANCIAL RECORDS TO PROBATION AS REQUESTED.

11         THE FIFTH CONDITION IS THAT YOU NOTIFY THE

12  COLLECTIONS UNIT OF THE UNITED STATES ATTORNEY'S OFFICE OF ANY

13  INTEREST IN PROPERTY OBTAINED DIRECTLY OR INDIRECTLY,

14  INCLUDING ANY INTEREST OBTAINED UNDER ANY OTHER NAME, ENTITY,

15  INCLUDING A TRUST, PARTNERSHIP, OR CORPORATION, UNTIL YOUR

16  FINE AND RESTITUTION ARE PAID IN FULL.

17         SIXTH, YOU MUST NOTIFY THE COLLECTIONS UNIT OF THE U.

18  S. ATTORNEY'S OFFICE BEFORE TRANSFERRING ANY INTEREST IN

19  PROPERTY OWNED DIRECTLY OR INDIRECTLY, INCLUDING ANY INTEREST

20  HELD OR OWNED UNDER ANY OTHER NAME, ENTITY, INCLUDING A TRUST,

21  PARTNERSHIP, OR CORPORATION.

22         AND YOU'RE PROHIBITED FROM OPENING CHECKING ACCOUNTS

23  OR INCURRING NEW CREDIT CHARGES OR OPENING ADDITIONAL LINES OF

24  CREDIT WITHOUT APPROVAL OF PROBATION.

25         MR. SIMPKINS, IN YOUR PLEA AGREEMENT, ON PAGE 24, YOU

1    GAVE UP YOUR RIGHT TO APPEAL OR COLLATERALLY ATTACK THE

2    CONVICTION IN THIS CASE AND THE SENTENCE THAT I JUST IMPOSED.

3    DO YOU UNDERSTAND THAT, SIR?

4              MR. SIMPKINS:  YES, YOUR HONOR.

5              THE COURT:  OKAY.  LET ME ASK PROBATION, MR. LEMON,

6    MR. YOUNG, MR. PLETCHER, IS THERE ANYTHING THAT I DID NOT

7    COVER THIS MORNING?

8              MR. YOUNG:  NOTHING FROM OUR PERSPECTIVE, JUDGE.

9              MR. LEMON:  I DON'T BELIEVE SO, YOUR HONOR.

10             THE PROBATION OFFICER:  NO, YOUR HONOR.

11             THE COURT:  OKAY.  WE'RE GOING TO GIVE YOU COPIES OF

12   THE CONDITIONS, MR. SIMPKINS, THAT I IMPOSED.  KEEP THAT

13   PAPERWORK, SIR.  IT'S IMPORTANT FOR YOU TO HAVE IT.

14             IF THERE'S NOTHING ELSE, THE COURT DOES WISH YOU

15   WELL, SIR.

16             MR. SIMPKINS:  THANK YOU, YOUR HONOR.

17             MR. LEMON:  THANK YOU, YOUR HONOR.

18             THE COURT:  OH.  ARE THERE SOME UNDERLYING CHARGES OR

19   THINGS THAT NEED TO BE DISMISSED?  TAKE A LOOK, COUNSEL.

20             MR. PLETCHER:  TO THE EXTENT THERE ARE, THE UNITED

21   STATES MOVES TO DISMISS THOSE.

22             THE COURT:  OKAY.  VERY WELL.  THAT MOTION WILL BE

23   GRANTED.

24             MR. PLETCHER:  THANK YOU, YOUR HONOR.

25             MR. YOUNG:  THANK YOU, YOUR HONOR.

1          THE COURT:  THANK YOU.

2          MR. SIMPKINS:  THANK YOU, YOUR HONOR.

3          MR. LEMON:  THANK YOU, YOUR HONOR.

4          (PROCEEDINGS ADJOURNED AT 11:25 A.M.)

5  ------------------------------------------------------------

6                    (END OF TRANSCRIPT)

7

8          I, FRANK J. RANGUS, OFFICIAL COURT REPORTER, DO

9  HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT IS A TRUE AND

10  ACCURATE TRANSCRIPTION OF MY STENOGRAPHIC NOTES.

11

12          S/FRANK J. RANGUS_____

13          FRANK J. RANGUS, OCR

14

15

16

17

18

19

20

21

22

23

24

25